## RAGSDALE *v.* NORTHERN PAC. R. CO.

*(Circuit Court, D. Minnesota. November 15, 1889.)*

1. **MASTER AND SERVANT—FELLOW-SERVANTS — TRAINMEN—CONDUCTOR AND FIREMAN.**
   In an action against a railroad company for injuries received by a fireman on a locomotive in a collision with another train, it is no defense that the negligence of the conductor of the latter train, in passing a station without stopping for orders, caused the collision, since he is the representative of the railroad in charge of the train, and not the fellow-servant of the employes on either train.
2. **SAME—ENGINEER AND FIREMAN.**
   Nor is the engineer in charge of the engine on which plaintiff was fireman a fellow-servant of plaintiff, and that his negligence caused the collision is no defense to the action.
3. **SAME.**
   The conductor is the superior of the fireman on the other train, within the meaning of Comp. St. Mont. § 697, providing that "the liability of a corporation to an employe acting under the orders of his superior shall be the same in the case of injury sustained by default or wrongful act of his superior, or to an employe not appointed or controlled by him, as if such servant or employe were a passenger."

At Law. On demurrer to answer.

*McDonald & Barnard* and *M. E. Clapp,* for plaintiff.

# 384

FEDERAL REPORTER, vol. 42.

*John C. Bullitt, Jr.*, for defendant.

SHIRAS, J. In the amended complaint filed in this cause it is averred that on the 17th day of March, 1888, the plaintiff was in the employ of the defendant company as a locomotive fireman; that in the performance of his duty as such he was on that day required to go upon engine No. 181, which was pulling a train between Missoula and Arlee, upon the line of defendant's road, in the then territory of Montana; that, through the fault and negligence of the defendant, a collision occurred between the train on which plaintiff was employed and another train belonging to defendant, near the station called "Evaro;" that plaintiff, to avoid the danger of being crushed to death by the coming collision, jumped from the engine on which he was firing, and received injuries resulting in the amputation of his right leg. In the answer filed, it is averred that, by the rules of the company in force when the accident happened, it was the duty of all trains on defendant's road to stop at all night telegraph offices, and receive a clearance order before proceeding past such office, between the hours of 7 P. M. and 7 A. M.; that under the rule it was the duty of the persons operating train No. 1 to stop at said station of Evaro, and not to pass the same until the proper clearance order had been received; that, disregarding such rule, the persons operating said train No. 1 did not stop at said station, but proceeded on eastward until said train No. 1 met the engine on which plaintiff was riding, and came in collision therewith; that the collision was caused by the negligence of the persons operating train No. 1; that such persons were fellow-servants with the plaintiff, and for their negligence the defendant is not responsible. The demurrer to the answer presents the question whether the facts therein averred show that the defendant company is not liable for the injuries received by plaintiff.

If the solution of the problem thus presented was wholly dependent upon the determination of the question whether, under the rule of the common law, the plaintiff and the parties in charge of train No. 1, were fellow-servants, we would have presented the exact point which the supreme court stated, but did not decide, in the case of *Railroad Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184. In that case an engineer was injured in a collision between two trains, which resulted from the negligence of the conductor of each train. The supreme court held that the relation of fellow-servant did not exist between the engineer and the conductor of the train on which the engineer was employed, but did not pass upon the question whether the conductor of the other train was or was not a fellow-servant with the injured engineer. The conclusion reached in that case, to the effect that the engineer and conductor of the same train were not fellow-servants, is placed upon the ground that the conductor was charged with the duty of running the train; was in command of its movements; directed when it should stop and when it should proceed; had the general management thereof and control over the persons on the train; and must therefore be held to be the representative of the company, for whose negligence the latter would be responsible.

In the case at bar the answer avers that the collision was caused by the negligence of the parties in charge of train No. 1, whose duty it was to stop at the station, and not to proceed beyond the same until the proper clearance order had been obtained. If the plaintiff had been a brakeman or fireman on train No. 1, and had been injured in the collision, without fault on his own part, it is clear that, under the rule recognized in the *Ross Case*, he would have had a right of recovery against the company, because the answer avers that the collision was due to the negligence of the parties in command of that train, and who occupied the same relation to it that the conductor did in the *Ross Case*. Is a different conclusion to be reached by reason of the fact that the plaintiff was a fireman upon engine No. 181? The supreme court holds that the conductor, having the control and management of the running of the train, is to be deemed to be the representative of the company, and not a fellow-servant with the engineer and other employes on that train. So far as the running and management of the train under his control is concerned, does he cease to occupy such representative capacity under any circumstances? Suppose in the collision in question the fireman upon train No. 1 had been injured as well as the plaintiff, and both had brought suit to recover for the injuries received. Under the rule laid down in the *Ross Case*, the court would be required in the one case to instruct the jury that the conductor in charge of train No. 1 was, by reason of the nature of his employment in connection with the train, the representative of the company, for whose negligence the master would be liable. Upon what theory could the court in the next case charge the jury that in the running and management of this train the conductor was not the representative of the company, but was in fact a fellow-servant with the employes upon the other train?

The control of the train is placed in the hands of the conductor, in order that there should be some responsible person charged with the duty of properly moving the train; that is, of determining when the train shall stop, and when it shall proceed, with reference to meeting and passing other trains upon the road. This power of control over the movements of a given train is not conferred upon the conductor with sole reference to the safety of the train upon which he is acting as conductor. He is charged with the duty of so moving his own train as to secure not only its own safety, but also to aid in securing the safety of other trains which are moving upon the same portion of the line. In the management of his own train the conductor must ever bear in mind that there may be other trains upon the road, and to secure the safety of his own train, and also of other trains, he must, as the representative of the company, exercise due care to avoid collisions. It is unquestionably the duty of the company, in running its trains, to exercise due care to see that the movements thereof are so regulated that collisions shall be prevented. For that purpose the defendant company adopted the rule set up in the answer providing that between the hours of 7 P. M. and 7 A. M. no train must pass beyond a telegraph station until it had received the necessary clearance order. The conductor of train No. 1 was charged with the duty

of observing this rule, not only for the protection of his own train, but also for the protection of any other train coming towards the station from the opposite direction. The employes on train No. 1 had the right to rely upon the conductor for the proper observance of this duty, and, if he negligently disobeyed the rule, any employe suffering injury would, under the doctrine of the *Ross Case*, have a right of action against the company. The conductor was placed in control of the movements of the train, and, by reason of the power thus conferred upon him, he became the representative of the company in that particular. The employes upon the other train, which was properly handled, had the right to expect of the company that it would, through its representatives, so control the movements of its other trains that the track would be left clear for the passage of the train going westward. The company undertook to move train No. 1 eastward over the line between Missoula and Arlee at the same time that plaintiff's train was moving westward. Under such circumstances, it was certainly the duty of the company to supervise and control the movements of both trains, so as to prevent a collision; and if in the moving of train No. 1 the conductor was the representative of the company, it must follow that, for negligence on part of the representative of the company, the latter would be liable to any one injured thereby. The negligent moving of train No. 1 would cause danger to the employes of both trains alike, and the company owed the same duty to the crews on each train. It is difficult to perceive any good ground, therefore, for holding that if the company, through its representative, the conductor of train No. 1, was guilty of negligence in the moving of that train, thereby causing a collision, any employe injured thereby, would not have a right of action against the company, irrespective of the question of which one of the colliding trains he happened to be on at the time of receiving the injuries.

On part of plaintiff it is further claimed that the statute of Montana, in force when the accident happened, modifies the common-law rule in regard to the liability for the acts of fellow-servants. The statute (section 697, Comp. St. 1888) is as follows:

"That in every case the liability of the corporation to a servant or employe, acting under the orders of his superior, shall be the same in case of injury sustained by default or wrongful act of his superior, or to an employe not appointed or controlled by him, as if such servant or employe were a passenger."

This statute does not go to the length of abrogating the general rule that the master is not liable to an employe for the consequences of the negligence of a co-employe, but it does enact, in effect, that a superior is not a co-employe with an inferior, and that one may be a superior as compared with another, even though the former does not control the latter. The enactment is based upon the known fact that, in carrying on the business of railroading, there are recognized grades among the numerous classes of employes, and, while they all are working for a common master and for an ultimate common result, they are practically not all co-servants. The present plaintiff was a fireman, and his duties were limited generally to attending to the furnace and other matters upon the engine.

He did not belong to that class of employes that were charged with the duty of controlling the movement of the trains. The answer expressly avers that the collision was caused by the negligence of the officials in command of the movement of train No. 1, and there is no fact averred which tends to show that as to them the plaintiff occupied any other position than that of an inferior, within the meaning of the statute of Montana. The act of negligence set up in the answer is that train No. 1 was moved past the telegraph station in violation of the rule of the company, and it is averred that this was done by those in command of such train. It will certainly not be claimed that a fireman upon the engine is an employe charged with the control of the moving of the trains, a duty primarily imposed upon the conductor, and it is certainly the fair inference that in the moving and running of trains the conductor is the superior of a fireman. In other words, the conductor or party charged with the control of the train is a superior, as compared with a fireman, within the meaning of the Montana statute. Under this section, the corporation is made liable to any one of its employes who, without negligence on his part, is injured by the default or wrongful act of a superior, even though the latter has no control over the former. Whether, therefore, the liability of the defendant corporation is to be determined under the common-law rule or under the statute of Montana, the facts set forth in the answer do not show that the act of negligence causing the collision and consequent injury to plaintiff was the act of a co-employe, but, on the contrary, it would appear therefrom that such act of negligence was the act of the representative of the corporation, who was also the superior of the plaintiff. This being the conclusion, it follows that the answer is insufficient, and the demurrer thereto is sustained.

SHIRAS, J. This cause has already been before the court on demurrer to the answer, and in the opinion then given it was held that, under the common-law rule and under the provisions of the statute of Montana, it could not be held that a fireman was a co-employe with the conductor of a train by whose negligence in controlling the movements of his train a collision was caused with the engine upon which the plaintiff was acting as fireman. By an amended answer now on file, it is averred that the collision was caused by the negligence of the engineer in charge of the engine upon which the plaintiff was acting as fireman, and that they were co-employes, and therefore the company is not liable. It is averred in the amended answer that the accident occurred on the 17th day of March, 1888; that on that day, and for some time prior thereto, the rules of the company provided that between the hours of seven in the evening and seven in the morning all trains should consider themselves held for orders at all night telegraph offices, and in accordance with said rule it was the duty of all trains on the defendant's line of railroad to stop at all night telegraph offices, and receive a clearance order, before proceeding past such office, between the hours named; that the rules of the defendant further provided that, in approaching stations whereat there are switches, all freight trains must move with great cau-

·tion·, ·and that the engineers of such trains, in passing such switches, should not run at a rate of speed greater than 10 miles per hour; that the station of Evaro was a night telegraph and switch station; that train No. 1 stopped a short distance west of said station; that one of the engines propelling the same was then detached, and passed upon a switch in order to get to the rear of the train; that it then passed to the main line east of and in the rear of train No. 1, where it was run into by the train on which plaintiff was acting as fireman; "that said train on which said plaintiff was employed, owing to the negligence and gross carelessness of the engineer thereof, one Lacey, approached said station at Evaro from the east, and ran by the same at a speed greatly in excess of 10 miles per hour, and did not stop at said station at Evaro, but on the contrary, in violation of the rules of defendant, was carelessly and negligently propelled and operated past said station by said Lacey, its engineer, and that it was so operated past said station of Evaro between the hours of seven in the afternoon and seven in the morning, to-wit, at 45 minutes past 9 o'clock on the night of March 17, 1888; that said collision was caused solely by the negligence of said engineer of the train on which said plaintiff was employed, and not by the negligence of defendant; that said engineer was a fellow-servant of said plaintiff, engaged in the same general employment, and that said plaintiff ought not to have or maintain any action against said defendant on account of the negligence of said engineer." In the original answer it was averred that the collision was caused by the negligence of those in charge of train No. 1; and in ruling upon the demurrer to that answer it was held that, under the doctrines announced by the supreme court in the case of *Railroad Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, the parties having control of the movements of train No. 1 could not be deemed to be fellow-servants with the employes upon engine No. 181. In the amended answer, now under consideration, it is averred that the collision resulted from negligence in the running of the train upon which plaintiff was employed, and thus the case is presented in an aspect more nearly resembling the facts of the *Ross Case*. In the amended answer it is charged that the collision resulted from the violation of two rules of the company, to-wit, running by the station without halting and obtaining the proper clearance order, and moving at a rate of speed greater than 10 miles per hour; and it is averred that the violation of these rules was due to the negligence of the engineer in charge of the engine upon which plaintiff was acting as fireman.

The principle recognized in the *Ross Case* by the supreme court is that one who is charged with the control of the movement of the train, who directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, or who, in other words, controls the movement of the train, is in no proper sense a fellow-servant with the fireman, the brakeman, or the engineer on such train. In that case a collision was caused by the negligence of the conductor in failing to communicate to the engineer an order which he had received, and the engineer was the person injured. The court held that the relation of

fellow-servants did not exist, and that the company was liable for the consequences of the negligence of the conductor. If, in the case now under consideration, it was averred that the collision was caused by the negligence of the conductor in controlling the movements of the train, there could be no question that it would be squarely within the rule recognized in the *Ross Case*, and that the claim of plaintiff to recover could not be defeated by the plea that the accident resulted from the negligence of a co-servant.

Does the fact that the collision in this case was caused by the negligence of the engineer change the relation of the parties? The solution of this question must be sought, not in the mere name applied to the one at fault, but in the relation he in fact occupied towards the company and the other train-men in the performance of the duty devolved upon him, and in the doing of which he was guilty of negligence. It is apparent to every one, having any knowledge of the operation of railway trains, that there are two persons thereon who divide between them the responsibility of the actual movement of the train. These persons are the conductor and the engineer. While the duties of these two persons are widely different yet practically by the combination of both are the movements of the trains controlled, and in the management thereof they each in their respective places represent the company, and they are not fellow-servants with the other employes upon the train who are not charged with the management of the train, and have no control over the same. The brakeman, the fireman, and the porters upon the train are not co-workers with the conductor and the engineer in the control and running of the train. They have no voice in determining the speed of the train, when it shall stop, when proceed, and other like matters. Touching all questions affecting the movements of the train, the relation of such employes towards the persons who have control over the movements of the train is that of inferior towards superior; the latter exercising absolute control, and the former owing the duty of obedience. According to the averments in the amended answer, two acts of negligence are charged upon the engineer, to-wit, not halting at the station at Evaro and remaining there until the proper clearance order was received, and in passing the station at too great a speed. It is clearly inferable from the answer that the control and management of the train in these particulars was a duty resting upon the engineer. He it was who should have brought the train to a halt at the station, and in fact he practically was the only one who could so control the train as to bring it to a stop before passing the station. So, also, he it was who controlled the speed at which the train was moving when it reached the station. Thus the amended answer charges that the person who had the actual control over the movements of the train, and whose duty it was to observe the rules of the company in the particulars named, was guilty of negligence in the performance thereof; and I can see no substantial ground for holding that the engineer, in his relation to such movements of the train as are wholly under his control, occupied any different relation to the other subordinate employes on the train than is occupied by

the conductor. If, under the rules of the company, the conductor had been primarily charged with the duty of causing the train to halt at Evaro station, and he had neglected such duty, and the plaintiff had consequently suffered the injuries complained of, then, under the rule in the *Ross Case*, the company would have been liable. The amended answer shows that the engineer was primarily charged with the duty of halting the train at Evaro station, and that he negligently failed in the performance of this duty. It seems to me that the same rule must be applied to the one case as to the other, and that the reason which sustains the liability of the company in case of the negligence of the conductor apply with equal force to the negligence of the engineer when such negligence occurred in a matter touching the actual movements of the train, and which was at the time wholly under the control of the engineer. In such matters the engineer represents the company, and for his negligence the company must respond. The demurrer is sustained.