EVANS v. CHAMBERLAIN.

1. NON-SUIT.—The rule is well settled, that if there is any pertinent testimony for plaintiff, the case must go to the jury.

2. ENGINEER AND BRAKEMAN—FELLOW-SERVANTS.—It seems that the engineer and brakeman of a freight train are fellow-servants, so that the latter cannot recover of a railroad company damages for the negligence of an engineer who was prudently employed.

3. MASTER AND SERVANT—APPLIANCES.—A railroad company is liable to its brakeman for injuries resulting to him from a defective bumper on a car that he was engaged in coupling, as it is the duty of the master to furnish the servant with safe appliances for the work required of him.

4. CHARGING JURIES—FACTS.—The charge in this case, considered as a whole, was not a charge upon the facts.

5. MASTER AND SERVANTS—DEFECTIVE APPLIANCES—OBLIGATION OF SERVANT.— A brakeman injured by a defective bumper is entitled to recover damages of the railroad company, his employer, even though by the use of ordinary care he might have discovered, but was in fact ignorant of, such defect, and this defect was not hidden.

Before HUDSON, J., Aiken, October, 1892.

Action by H. S. Evans against D. H. Chamberlain, as receiver of the South Carolina Railway Company.

*Messrs. Henderson Bros.*, for appellant.

*Mr. John Gary Evans*, contra.

November 20, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The plaintiff was a brakeman on the railway operated by the defendant as a receiver, and claims that he was injured by the coming together of two bumpers of two freight cars at Branchville on February 4, 1892. The complaint alleges as follows: "That at night, at Branchville, a station on said line of railway, he was engaged in coupling cars on said freight train, which said act was his duty, and within the scope of his employment; that while making a coupling on said train, it was necessary for plaintiff to use his right hand to hold and place in position the coupling pin; that while so engaged, the cars were pushed together with undue force by the engineer, and through the carelessness and wanton negligence of the defendant, a weak, defective, and insecure bumper had been appended to one of said freight cars, which said fact was unknown to the plaintiff; that as soon as the bumpers of the said freight cars came together, by reason of the negligence and carelessness of the defendant or his agents in using unnecessary force in pushing said cars, and by reason of said insecure, weak, and defective bumper, said bumper was driven in and rendered useless, allowing plaintiff's right arm to be caught between the dead-block of one car and the body of the other, thereby breaking, mangling, and rendering the same useless for life. That had it not been for the carelessness and negligence of defendant in using such defective and insecure bumper, and the careless and reckless manner of defendant's agents in pushing said cars together, said injury to plaintiff could not have happened, it being otherwise impossible for said cars to have come together so as to injure plaintiff. That by reason of defendant's negligence, plaintiff has lost the entire use of his right arm, and has been damaged thereby to the reasonable amount of two thousand ($2,000) dollars," &c.

These allegations were denied by the receiver, and the issue thus made up came on for trial before his honor, Judge Hud-

son, and a jury. There was much testimony, which is all printed in the record. When the plaintiff rested, the defendant moved for a non-suit upon the ground that there was no evidence of negligence to go to the jury, which was refused, and the case went to the jury. Both parties made requests to charge, but it will not be necessary to consider any of them except those as to which the appellant alleges error. Under the charge of the judge, the jury found for the plaintiff one thousand ($1,000) dollars damages; and the defendant appeals to this court upon the following exceptions:

"*First.* That his honor erred in refusing to grant non-suit on the motion of the defendant, for the reason that the testimony produced by the plaintiff showed an entire failure to prove the alleged cause of action set up by the plaintiff in his complaint against the defendant, and showed an entire failure of proof as to any cause of action against the defendant," &c. As we understand it, the rule is well settled, that if, in a law case, there is any pertinent evidence to be considered, the case must go to the jury. In such a case, neither the Circuit Judge nor this court has the right to weigh conflicting evidence. It is, however, within the province of the Circuit Judge to determine, in the first instance, whether there is any evidence to go to the jury; that is to say, whether, regarding the plaintiff's evidence as true, the case, as it stands, is such as to authorize the jury properly to find for the plaintiff, and if so, the case should go to the jury. Now, taking this as the test, did his honor, the judge, commit error of law in refusing a motion for non-suit in this case?

(1.) As to the allegation of the complaint, that "The cars were pushed together with undue force by the engineer," &c., we do not think that there was sufficient proof to make a *prima facie* case of negligence. Besides, if such had been shown, we incline to agree with the judge, that the *engineer and brakeman* were fellow-servants, in the sense of the rule upon that subject, and that, there being no evidence that the *engineer* had been employed without due care, or was not competent, the plaintiff could not recover from *the company* damages for an injury caused by the negligence of the engineer

in managing his engine in the operation of coupling or uncoupling cars in his train.

(2.) But the judge held that there was some evidence to go to the jury upon the other allegation of the complaint, viz:

"That a weak, defective, and insecure bumper had been attached to one of the cars to be coupled or uncoupled, which fact was unknown to the plaintiff," &c. As we consider it, this is a very different matter from mere carelessness on the part of the engineer, in managing his engine so as to assist in the operation of uncoupling cars in his train. "While it is true, on the one hand, that a workman or servant in entering into an employment, by implication agrees that he will undertake the ordinary risks incident to the service in which he is engaged (including injuries from fellow-servants), it is also true, on the other hand, that the employer or master impliedly contracts that he * * * will also take due precaution to adopt and use such machinery, apparatus, tools, appliances, and means as are suitable and proper for the prosecution of the business in which his servants are engaged, with a reasonable degree of safety to life and security against injury," &c. See *Hooper* v. *Railroad Company,* 21 S. C., 541. It thus appears that it is one of the essential contract duties of a railroad company as such to furnish all employees with safe and suitable appliances to perform the work in which they are engaged, and this certainly includes *bumpers to cars* in good repair, one object of which, as we suppose, is to prevent collision, by keeping the bodies of the cars at a certain distance from each other. In the line of his duty, the plaintiff was required to uncouple cars at Branchville, to be left there. No defect in the bumpers was apparent. The plaintiff made an effort to uncouple, and in doing so had to use his right hand, and at that instant the cars came so close together that his right arm was crushed, before the rebound of the cars. There was testimony of experts tending to show that such could not have been the result if the bumpers on the cars had been sound and in good repair. We can not say that the trial judge committed error of law in refusing to grant the non-suit.

"*Second.* That his honor erred in charging the jury, as re-

quested by the plaintiff's attorney in his third request to charge as follows: 'That if the jury believe the bumper which caused the injury to the plaintiff was defective, and had been allowed to remain so by the defendant, the plaintiff is entitled to a recovery, even though he may have been able to discover such defects by the use of ordinary care and diligence.' For it is submitted that the charge was erroneous in charging upon a question of fact, viz: that the bumper caused the injury; and was further erroneous in this, that if the plaintiff could discover the alleged defect as well as the defendant, and did not do so, he could not recover under the law," &c.

(1.) We do not think that the judge charged "in respect to facts," in saying, "That if the jury believe that the bumper, which caused the injury to plaintiff, was defective," &c. When the expression fell from the judge, he was not considering the question as to what inflicted the injury, but whether the plaintiff should be precluded from recovering, if he could by ordinary care and diligence have discovered the defects alleged to exist. There was no conflict of testimony or even a contention as to injury to the plaintiff, or as to where it was received. Besides, in determining whether the Circuit Judge has committed error of law in his instructions to the jury, the charge must be considered as a whole, and considered in this light, the defendant certainly had no cause to complain of the charge. After a full and clear statement, the judge said: "Bear in mind, you must determine from all the evidence whether that arm was broken from defective machinery. The plaintiff has so alleged, and the burden of proof is upon him, and he must satisfy you by the preponderance of the evidence that it is so; and if he does not, then the evidence is wanting, and the case should fail. If you come to the conclusion that the evidence does not show that the machinery was broken, but the arm was broken by the want of proper skill on the part of the plaintiff, then the company is not responsible," &c. See *Hume, Smalls & Co.* v. *Insurance Company,* 23 S. C., 190.

(2.) But the plaintiff further insists that the judge should have charged, that if the plaintiff could have discovered the alleged defect *as well as the defendant,* and did not do so,

he could not recover under the law. This view would emasculate the fundamental rule, that it is incumbent upon the master to furnish safe and suitable appliances for the employee. As was said by the Chief Justice, in delivering the judgment of the court in the case of *Carter* v. *Oliver Oil Company*, 34 S. C., 215 : "The rule is that it is the duty of the master and not of the servant to exercise due care and diligence to ascertain whether the appliances furnished are safe and suitable; and a servant has a right to assume, without inquiry or examination, that the appliances furnished him are safe and suitable. *Lasure* v. *Manufacturing Company*, 18 S. C., 281. Of course, if he uses a machine or other appliance, knowing at the time that it is out of repair to such an extent as to render it unsafe, then another rule applies, with certain qualifications, which it is needless to state here," &c.

We have carefully considered the case of *Grant* v. *The Pennsylvania &c. Railroad Company*, 133 N. Y. (Sickles), 657, cited and relied on by defendant's counsel. While at first view there does seem to be some analogy between that case and this, we think that, upon a close examination, it will be found to be more seeming than real. In the New York case, the plaintiff, an employee of the defendant, was at work upon one of three coal cars standing on a trestle. Two other loaded cars were being pushed upon the same trestle by a locomotive to which they were attached by a draw-bar, which was slightly bent. When they approached the three cars, steam was reversed, the engine stopped, and the draw-head of the first car, to which the draw-bar was attached, broke, and the two cars ran into the cars standing on the trestle with such force as to push them over the end of it, and the plaintiff was injured. There was a verdict for the plaintiff. It was not denied that the breaking of the draw-head was the cause of the injury, and the question was, whether the fracture was made by the slight bend in the draw-bar, or by some possible latent defect in the draw-head of the car. The court saying, among other things, "That it appears almost beyond doubt that the deviation of the draw-bar from a straight line had no effect whatever in producing the result," held as follows: "Where, in an action to recover

damages for personal injuries, alleged to have been caused by the negligence of the defendant, it appears that there were two or more possible causes of the injury, for one or more of which the defendant was not responsible, the plaintiff, in order to recover, must show by evidence that the injury was wholly or partly the result of a cause for which the defendant is responsible. · If the evidence leaves it just as probable that the injury was the result of one cause as of the other, the plaintiff cannot recover," &c.

Now, in this case, it seems that there was no breaking, as to which a question might arise as to "a latent defect;" but the Circuit Judge placed the whole case upon the question of fact, whether the "bumper" was defective and caused the injury. In charging, he said: "Bear in mind you must determine whether, from all the evidence, that arm was broken from defective machinery. The plaintiff has so alleged, and the burden of proof is upon him, and he must satisfy you by the preponderance of the evidence that it is so," &c. We cannot doubt that, under this charge, the jury found solely upon the allegation that the injury was caused by the defective bumper, being a cause for which the company was responsible. In a law case this court cannot review the testimony with the purpose of granting a new trial for the want of sufficient evidence.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.